Good morning, Your Honors. May it please the Court, Chris DeHart on behalf of John Ballard. I would like to reserve about three minutes for rebuttal. Okay. In this instance, Mr. Ballard was convicted for what he didn't say, what he didn't want to tell his probation officer. He has a right, a Fifth Amendment right, to not say anything that's incriminating. And in this situation, he was in what is referred to as the… Does he have a Fifth Amendment right not to say something that will get his supervised release revoked? He has a right to not say something that's going to result in new charges. I believe that he is ordered by the… That's my question about the Fifth Amendment right then. I understand that he has a right not to say something that will result in new criminal charges. But does he have a right not to say something that might result in or would result in his supervised release being revoked? Yes, he would, because he's facing additional time in custody. And in this case… And do you have a case that says that? Not specifically, but it is a penalty situation, which is what the other case is cited in my brief referred to. Well, it's different, though, isn't it? He basically has an obligation to abide by the supervised release conditions that the court has imposed, which also suggests that he has an obligation to cooperate with the court's probation officer who is trying to supervise him. So I think Judge Fletcher has sort of hit the nail here. If he has an obligation to say something to his probation officer in response to a question, what did you do today, does he have a Fifth Amendment right to say, well, I'd like to tell you, but if I do, you might file a petition to violate my conditions of release? Yes, he does, because he was facing additional time in prison based upon his… No, he's facing the same time. This is all part of the continuing service or execution of the sentence that was originally imposed. And by the grace of the Bureau of Prisons, he has been released early, but he's still under the active supervision of the court, and he hasn't yet served all of the time that Congress has prescribed for this particular offense, has he? Well, I wouldn't say that by the grace of the Bureau of Prisons he was released early. He had served the time that the previous judge had sentenced him to serve. And I think the distinction that Judge Fletcher was trying to get at is, is there a distinction in the law between an unexecuted portion of a sentence and new charges that might be filed as a result of criminal activities that he engages in while he's on supervised release? I did not find a specific case on point on that issue. The court has specifically said that you don't have that kind of Fifth Amendment right. Has it not? It has said that… You can be required to say things where they'll bust your parole as long as it's not going to cause them to what? To file new criminal charges. Correct.  I'm sorry? Because of what he did, they filed him for lying. No, they filed him for not… They filed him for what? Omitting information from his journal. And he has a right to not say anything that's going to result in new charges. Well, does he have a right if the probation officer says, what did you do today to lie to the probation officer by omitting the fact that he went to the library and looked at sites containing children? That's a tacit invocation of his Fifth Amendment right to remain silent by not answering that question. But there's no crime in a person going and looking at pictures of children, especially pictures like of Vogue. Vogue Bambini. Yeah. There's no crime in that. He doesn't incriminate himself at all by saying that. Well, that's actually not true because he, the probation officer, did in fact revoke his probation. That's not the same thing as the Fifth Amendment right not to be prosecuted for committing a crime. He didn't commit any crime by looking at those things. He just violated his terms of probation. Not probation, supervised release, shall we say. He violated his supervised release terms. That's no crime. Correct, but he was charged with a new crime based on not saying anything. Whatever. That's a different question. The question is whether you can omit intentionally or whether you have to say, but, you know, I'm not going to tell you because I might be charged with a crime, which then could be adjudicated, I suppose. Obviously, he couldn't be charged with a crime. Ain't no Fifth Amendment right there that I can say. So the Supreme Court has told us. You know, your time is going to run on you. I'm trying to figure out the sentencing guideline argument here because it seems to me possible that the government and the district judge relied upon the wrong sentencing guideline. Can you explain your argument so that we can make sure we can tee it up for the government to respond? Your Honor, they relied on the obstruction of justice guideline, which is much, much higher than the guideline for the 1001, and it more than doubled. And regardless of what the judge ultimately sentenced, which we don't know why he came up with the sentence he came up with because the record is void of any reasoning on behalf of the judge for why he came up with the sentence he came up with. The record contains references to psychiatric reports by both Bureau of Prison Psychiatrists and your own psychiatrists that this guy is unrepentant, that he's just not amenable to treatment. There are reports in the record. However, when the judge was imposing the sentence, he didn't specify what he relied upon. And he did not start with, in what is our view, the correct guideline. So he didn't even start. He did adopt the pre-sentence report, did he not? Yes. And that contains references to the psychiatric evaluations that basically tells the court the guy didn't make it at Butner because he flunked out of the sex offender treatment program. So that didn't work. Correct. And denies that he's got a problem. So why isn't that enough when the judge invokes 3553A, which contains a specific provision for danger to the community, for the court to decide the only thing left for me to do is to sentence him to the maximum that I can under the law? Because, one, I don't believe he did sentence him to the maximum that he could have under the law.  It is, but I believe he had the authority to either run them consecutive or concurrent or to run his supervised release violation consecutive or concurrent. And he ran them concurrent. He ran them all concurrent. So he got a break. Correct. So the judge could have sentenced him to more time. And the judge chose not to. We don't know why because the record's not clear. And so I think it's important to start out as a baseline, the correct guideline. For example, we don't know if the judge was saying, look, I want to double your sentence, so we're going to take the low end of 27 months, double it, and that gets us close to the five years or the high end, 33 months, which gets him close to the five years. Maybe if he'd started with the correct guideline, he would have gone with the idea, well, we're going to double it and come up with a substantially lower sentence. And there was a fair amount of argument, actually, below as to proportionality. If you apply one guideline, you're going to get a proportionality of X. If you apply the obstruction guideline, it's going to be a huge multiple of that. Correct. So the judge heard that argument. Yeah. And the judge thought that the obstruction was the proper guideline. Yes. Yeah. Okay. Why don't we hear from the government and then you've saved some time. Thank you. Good morning. May it please the Court, my name is Samuel Wong. I'm an Assistant United States Attorney in Sacramento, California. What I wanted to do is address some of the questions that the defense counsel has raised. And it is very important to understand that had John Beller been truthful to his probation officer in answering the questions or in his daily journal, what did you do today? He would not have incriminated himself in any new crimes or incriminated himself in any violation of supervised release had he just told his probation officer that he had gone to the library to check out the book, which is harmful to minors, the perils of preventing children from having sex. And had he told his probation officer that he had gone to the Tower Bookstore to buy the Vogue Bambini, a magazine that featured children in fashion, clothes, and swimwear, that would not have been a crime, that would not have been a violation of a supervised release. But what he did instead was he concocted this scheme to lie about what he did that day. He covered up what he was doing. And you're saying that silence, failing to record it in the journal, is a lie, and the jury agreed with that. It's more than just a silence. It was a scheme to mislead the probation officer and frustrate her in her attempts to properly supervise John Beller. John Beller is a high-maintenance supervised releasee. He requires a lot of attention. You have to know exactly what he's doing because he has violated supervised release in the past. He has committed numerous crimes against children. And so it was very important for the probation officer to know exactly what John Beller was doing. That's why she imposed this reporting requirement. Why is obstruction the proper guideline? Because I'm inclined to think that it's not. So tell me why it is. If you look at Section 1001, that pertains to just false statements and also schemes to conceal truthful facts, that sort of thing. If you look at the guidelines that are recommended in the back of the 2005 Sentencing Guidelines manual, it refers to 2B1.1, and I think it refers also to possibly 2J1.1. But 2B1.1 is a guideline section that really addresses monetary crimes, I would submit to the Court. But I'm kind of stuck on the appendix that says, okay, I'm looking at 18 U.S.C. 1001, and it says 2B1.1, then comma, 2J1.2, but then there's a parenthesis after that. And does this crime fall within that parenthesis? It falls more into the 2J1.2. My question is more specific than that. Not whether it falls more into. Does this crime fit within the crime described in this parenthesis? What's the maximum sentence for this crime? Five years. And this says, what, eight years? That's for false statements in connection with terrorist cases and also false statements in connection with sexual exploitation crimes. But if you look at the cross-reference under 2B1.1, it talks about another way to get outside of 2B1.1. And what cross-reference are you referring to? So I'll make sure I can read it here. I think it's 2B1.1C3BNC. Okay. Say that slowly so I can follow you. 2B1.1. I got that part. C. And I'm looking at the guideline itself, not the commentary. Okay. C. Yep. Okay. 3. Yep. And then it talks about, I think, B and C. Or at least it talks about the act. And so the conduct has to be set forth under the count of conviction, established offense specifically covered by another guideline. Specifically covered, not more like. Well, it's specifically covered by the J obstruction guideline? Well, the obstruction guideline is very analogous to what John Dowell is doing. But the word here is specific. I'm just reading now C. 3. If neither subdivision 1 or 2 of this subsection applies, which is right, B, the defendant was convicted under a statute prescribing false fictitious or fraudulent statement, e.g. 1001. Okay. And the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline. Apply that other guideline. So you have to be able to say that this offense was, quote, specifically covered, close quote, by the obstruction guideline. The way that I would submit to the Court is that specifically should be.  Well, read a little bit differently. Kind of like. In that it is the obstruction of justice guideline addresses obstruction of justice. What do we have here? We have an attempt by. But I'm afraid I'm hung up on language that says specifically covered. Well, 2J 1.2 does specifically cover obstruction of justice. You argued to us in your briefing, I believe, that we should look at 18 U.S. Code 1505 if we want to see what obstruction of justice is. That was just as an analogy, Your Honor. Well, okay. That's what you told us to look at. And that doesn't even look close. So it's a terrible analogy, which suggests that 2J 1.1 is a pretty terrible analogy, too. I'm sorry, 2J 1.2. Okay. This, if you look at what 2B 1.1 is designed to address, though, it's really designed to address monetary crimes. It's fraud and statements that are used to cheat people out of money. And then you look at how much money has been lost in order to calculate the guideline section. Right. But I'm stuck with Appendix A that tells me which guidelines to apply to which statutes. Well, even if the district court was wrong, I was asked that the court remand this case back to the district court for resentencing. District court can upward depart in this case back to the same level of a 60-month sentence. And it well might. In fact, if you look at 2B 1.1, application note number 19, it talks specifically about there may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. In such cases, an upward departure may be warranted. And then it says the following is a non-exhaustive list of factors that the court may consider in determining whether an upward departure is warranted. And the first example is a primary objective of the offense was an aggravating non-monetary objective. For example, a primary objective of an offense to inflict emotional harm. But I would submit to you that that same provision could apply to this case where the probation officer and frustrate her attempts to supervise him properly. So let me make sure I understood what you said. If we conclude that the J, obstruction of justice guideline is not appropriate, but rather the B, where I call it fraud, I don't know, financial fraud guideline applies, your suggestion is that we remand for resentencing? Yes. I would ask the court to remand for resentencing, ask Judge Kuhnauer to come back, restudy this issue, and resentence him. And then I would ask Judge Kuhnauer at the sentencing hearing to look at this guideline provision that I just read to you, 2B1.1 Application Note 19, and ask the court to impose the same sentence of five years on each count for each violation of Section 1001 and two years on the supervised release violations. And I suppose that the court would run those concurrently again. So I think that would be the proper direction that this court should take. I respectfully request that. Okay. Are there any questions about anything else? I'd be happy to keep talking if you want me to. No, if you're finished, you're finished. I think we are. All right. Well, thank you. Thank you. Concerning the guideline, 2J1.2 specifically says that 2J1.2 should not be used in this type of situation. So the guideline is clear on that. Also, as the government attorney had noted that Mr. Ballard had been prosecuted in this type of situation before, and in the prior case that used the 2B1.1 guideline, which the court probation and the government all believed was appropriate at that time, under a very similar set of facts and circumstances. So it's unclear now why we should be changing the guidelines that we're using. And in my last few seconds that I have here, I would also like to say that, you know, the sentencing record is, in my view, not very thorough. And he imposed numerous special conditions without making any specific factual findings. And the defense had objected to a number of those in their written pleadings, also orally. And the judge didn't make any factual findings for any justification for why those special circumstances should be imposed. So I believe it should be remanded on that issue also. Okay. Thank you. Thank you very much. Thank you, both sides, for your arguments. The case of the United States v. Jenkins is now submitted ñ excuse me, United States v. Ballard is now submitted for decision.
judges: Fernandez, Fletcher W. , Tallman